
***E-FILED - 1/5/10***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY RAY WYATT,<br><br>    Plaintiff,<br><br>  v.<br><br>D. SWEARINGEN, T. LUCARELLI, and M. FOSS,<br><br>    Defendants. | No. C 06-4228 RMW (PR)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

    Plaintiff Ricky Ray Wyatt, proceeding pro se, filed a second amended civil rights complaint on March 14, 2008, pursuant to 42 U.S.C. § 1983 against officials and employees of Pelican Bay State Prison ("PBSP"), where plaintiff is housed. Plaintiff alleges that he was denied his Fourteenth Amendment procedural due process rights by the decisions of three committees in setting his work-group and privilege-group status at the most restrictive levels. Defendants filed a motion to dismiss and motion for summary judgment. Plaintiff filed an opposition. Defendants filed a reply.

    Based on a careful review of the papers, the court GRANTS defendants' motion to dismiss as to defendant Lucarelli and DENIES defendants' motion to dismiss as to defendant Swearingen, and GRANTS defendants' motion for summary judgment as to defendants Swearingen and Foss.

# BACKGROUND

Plaintiff is an inmate with the California Department of Corrections and Rehabilitation ("CDCR"). He was transferred to PBSP on December 22, 2004.

A.   Plaintiff's disciplinary reports

Plaintiff was issued several rule violation reports on a CDC Form 115 at Folsom State Prison ("FSP") before being transferred to PBSP. His first report was issued on September 3, 2004, when plaintiff allegedly refused to take a cellmate. (Mot., Ex. D-1.) Plaintiff's second report was issued on October 6, 2004, when he allegedly refused staff orders to handcuff so that he could receive a cellmate. (Id., Ex. D-4.) Finally, on October 13, 2004, Plaintiff was issued a third rule-violation report for allegedly refusing an order to handcuff in order to be transported. (Id., Ex. D-18.)

For each of these violations, plaintiff had a hearing where he received advance written notice of the charge against him; an opportunity to appear at the hearing, call witnesses, and present evidence; and a written statement concerning the basis on which the factfinder upheld the charge. (Id., Ex. D-1 to D-3, D-4 to D-5, D-18 to D-19.) Plaintiff was also given an opportunity to appeal his charges, all the way to the Director's Level, which he did for the two later charges. (Id., Ex. D-6 to D-17, D-20 to D-31.) Plaintiff does not dispute that he was issued these reports or that he received the process described for each report.

B.   December 28, 2004 classification hearing

Plaintiff's initial classification hearing took place on December 28, 2004, and was chaired by Defendant Swearingen. (Compl. at 32.) At this hearing, the committee examined plaintiff's record, and took note of his prior disciplinary reports. (Id.) Prior to his transfer to PBSP, plaintiff had been on single-cell status from May 11, 2000, to September 1, 2004, due to "mental health issues," a "propensity for violence," and an alleged statement made in April 2000: "You want me to take a cellie and kill him or something?" (Id.) Once he arrived at PBSP, plaintiff stated that he was willing to be double-celled with another inmate, but that he feared for the safety of any inmate that would share a cell with him. (Id.) Based on this record, the

Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.06\Wyatt228grantmtdandmfsj.wpd

2

committee decided to place him in single cell status and assigned him to Work Group C and Privilege Group C, also known as C/C status. (Id.)

Plaintiff was present at and participated in the hearing. (Id.) The hearing transcript states that plaintiff refused the committee's request that he see a psychiatrist, saying that only a court order would compel him to do so. (Id.) The transcript also notes that plaintiff agreed with the committee's decision to place him in C/C status, stating that the committee's decision "did him a favor." (Id.)

Plaintiff alleges that this committee based its decision on false charges that he was unwilling to accept a cellmate. (Id. at 5; Opp. at 6, 9.)

C. <u>May 17, 2005 classification hearing</u>

Plaintiff's second classification hearing took place on May 17, 2005, and was chaired by Defendant Lucarelli. (Compl. at 33.) Plaintiff also attended and participated in this hearing. (Id.) The hearing transcript states that plaintiff did not want to be assigned to double-cell status, but refused to undergo a psychiatric evaluation that would assess whether his mental health problems qualified him for single-cell status. (Id.) The transcript further states that plaintiff told the committee, "You better send me to the hole, because I am going to be a problem." (Id.) Consequently, the committee continued his single-cell and C/C status. (Id.)

Plaintiff alleges that this committee based its decision on false charges that he was unwilling to accept a cellmate. (Id. at 5; Opp. at 6, 9.)

D. <u>October 25, 2005 classification hearing</u>

Plaintiff's third classification hearing took place on October 25, 2005, and was chaired by Defendant Foss. (Compl. at 31.) This hearing was plaintiff's annual status review, which plaintiff refused to attend. (Id.) The committee cited to plaintiff's recorded conduct at his December 28, 2004 hearing, and his documented refusal since that hearing to submit to a psychiatric evaluation while threatening to harm any potential cellmates, and decided to continue plaintiff's single-cell and C/C status. (Id.)

1 Plaintiff alleges that this committee based its decision on false charges that he was
2 unwilling to accept a cellmate. (Id. at 5; Opp. at 6, 9.)

## DISCUSSION

Plaintiff filed his second amended complaint with this court on March 21, 2008. Plaintiff alleges a violation of his Fourteenth Amendment right to due process. Specifically, plaintiff alleges that he was placed on C/C status as punishment based on false charges that he had refused to accept any cellmates. (Compl. at 5.) He argues that he should have received more process than he was given: written notice of the charges 24 hours in advance, the opportunity to call witnesses and present evidence at the hearing, and a written statement by the factfinder regarding the evidence upon which the decision was based. (Id. at 3, 5-6.) Plaintiff sues Defendants Swearingen, Lucarelli, Foss in their individual and official capacities, for $50,000 each in nominal damages and $50,000 each in compensatory damages. (Id. at 4.)

Defendants give three responses to plaintiff's argument. First, they argue that plaintiff failed to exhaust the requisite administrative remedies against two of the defendants, and that those two defendants should be dismissed from the lawsuit. (Mot. at 8-9.) Second, they argue that this court should grant summary judgment in favor of them because plaintiff received all the process that he was due in the classification process and hearings. (Id. at 10-13.) Finally, defendants argue that they are entitled to qualified immunity, because even if plaintiff can establish that they violated his constitutional rights, the unlawfulness of their conduct would not have been clear to a reasonable officer. (Id. at 14-15.)

Defendants' arguments are addressed in turn.

A      Motion to Dismiss

    1.      Standard of Review

Nonexhaustion under 42 U.S.C. § 1997e(a) is an affirmative defense; defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). A nonexhaustion claim should be raised in an unenumerated Rule 12(b) motion rather than in a motion for summary judgment. Id.  A complaint may be dismissed by

Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.06\Wyatt228grantmtdandmfsj.wpd
4

the court for failure to exhaust if a prisoner "conce[des] to nonexhaustion" and "no exception to exhaustion applies." Id. at 1120. In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20.[1] If the court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without prejudice. Id. at 1120.

The Prison Litigation Reform Act ("PLRA") of 1995 was amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and not left to the discretion of the district court. Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Ngo I") (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such actions involve general conditions or particular episodes, whether they allege excessive force or some other wrong, and even if they seek relief not available in grievance proceedings, such as money damages. Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). However, the obligation to exhaust only persists as long as some remedy is available; thus, a prisoner need not exhaust further levels of review once he has received all the remedies that are "available" at an intermediate level of review. Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).

Prisoners in California must exhaust four levels of review. Cal. Code Regs. Title 15, § 3084.1(a). The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Id. California also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. See id. § 3084.1(e). In order to exhaust available administrative remedies within this system, a

---

[1] If the court looks beyond the pleadings in deciding an unenumerated motion to dismiss for failure to exhaust -- a procedure closely analogous to summary judgment -- the court must give the prisoner fair notice of his opportunity to develop a record. Wyatt, 315 F.3d at 1120 n.14. Plaintiff was given such notice in the order of service.

Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.06\Wyatt228grantmtdandmfsj.wpd

1 prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal
2 written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head
3 or designee, and (4) third level appeal to the Director of the California Department of
4 Corrections. Id. § 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). This
5 satisfies the administrative remedies exhaustion requirement under § 1997e(a). Barry, 985 F.
6 Supp. at 1237-38.

7      The PLRA requires "[p]roper exhaustion," which "demands compliance with an agency's
8 deadlines and other critical procedural rules." Ngo I, 548 U.S. at 90-91. Therefore, "filing an
9 untimely or otherwise procedurally defective administrative grievance or appeal" does not
10 satisfy the PLRA's exhaustion requirement. Id. at 84. In California, prisoners must file the
11 initial administrative grievance "within 15 working days of the event or decision being
12 appealed." Cal Code Regs. Title 15, § 3084.6(c). A prisoner may not rely on a continuing-
13 violation theory to extend the deadline; as such the deadline runs from the date of the prison
14 decision or action being appealed, not from the date the effects of such decision or action are felt
15 by the inmate. Ngo v. Woodford, 539 F.3d 1108,1109-10 (9th Cir. 2008) ("Ngo II").

16     2.    Analysis

17      In their motion to dismiss, defendants state that plaintiff has exhausted only his October
18 25, 2005 hearing. (Mot. at 8-9.)  Thus, they argue that defendants Swearingen and Lucarelli
19 should be dismissed from the case, because they chaired the December 28, 2004 and May 17,
20 2005 hearings. (Id. at 9.)

21      Plaintiff responds that he only has to file one appeal on his "classification process" in
22 order to exhaust his administrative remedies, which he filed on October 25, 2005. (Opp. at 13-
23 14.) He also asserts that he filed a timely appeal, and several duplicate appeals, regarding his
24 December 28, 2004 hearing. (Id.) Plaintiff did not submit the attempted appeals to this court, but
25 he did include a pleading from a state habeas petition, stating that plaintiff filed an initial appeal
26 and four duplicate appeals, but all were unsuccessful because he failed to attach the correct
27 accompanying form. (Id., Ex. C-1.)

28
Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Defendants' Motion for
Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.06\Wyatt228grantmtdandmfsj.wpd

1   Plaintiff is wrong in arguing that he only has to file one appeal in order to exhaust his
2   remedies for the entire classification process, as he must file any administrative grievance
3   "within 15 working days of the *event* or *decision* being appealed." Cal Code Regs. Title 15,
4   § 3084.6(c) (emphasis added). See Ngo II, 539 F.3d at 1110. Each hearing held to determine his
5   work group/privilege group status was a separate event, where his status could have been
6   continued or terminated. Plaintiff must challenge each hearing in a timely manner– within 15
7   working days– in order to his exhaust his administrative remedies. Id.

8   In addition, plaintiff's several attempted appeals of the December 28, 2004 hearing are
9   insufficient to constitute exhaustion of his administrative remedies, because he did not comply
10  with the requirement of attaching the correct form. See Ngo I, 548 U.S. at 90-92.

11  Nevertheless, the court concludes that plaintiff has exhausted his administrative remedies
12  with regard to the December 28, 2004 and October 25, 2005 hearings. On October 25, 2005,
13  plaintiff filed an formal written appeal on a CDC 602 inmate appeal form. (Mot., Ex. C-12.)
14  The grievance is identified by log no. B-05-02967. (Id.) Upon being asked to clarify the action
15  that he was requesting, plaintiff stated that he had been on group C/C status for over a year, and
16  was requesting to know "why" and that his status "be overturned effective 12-28-04," and that
17  certain items of property (a television and a cassette player) be returned to him. (Id., Ex. C-7.)
18  Plaintiff's appeal was partially granted, and he was told that a committee would convene to
19  consider whether plaintiff should be continued on C/C status and whether the actions of the
20  December 28, 2004 and October 25, 2005 committees were appropriate. (Id., Ex. C-3.)

21  After plaintiff filed his appeal, another classification committee convened on January 5,
22  2006, to review his C/C status. (Compl. at 34.) The committee noted that plaintiff had been
23  "disciplinary free" during his time on C/C status, and decided to change his work-group and
24  privilege-group status to A2 and B, respectively, which are less restrictive than C/C status. (Id.)
25  Plaintiff filed an appeal to the director's level regarding compensation for his property. (Mot.,
26  Ex. C-1 to C-2.) It was determined that he was not entitled to compensation because the loss of
27  his property was not due to the actions of CDCR employees. (Id.)

28  Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Defendants' Motion for
    Summary Judgment
    P:\PRO-SE\SJ.Rmw\CR.06\Wyatt228grantmtdandmfsj.wpd

1       The officials at PBSP appear to have accepted plaintiff's appeal, which included both the December 28, 2004 and October 25, 2005 hearings, even though his appeal of the outcome of the October 25, 2005 hearing was not timely. (See id., Ex. C-3.) In addition, although plaintiff brought his appeal of both hearings regarding his C/C status only through the second level of review, he obtained the only relief that was available to him regarding that claim, which was having his C/C status changed. Thus, he has exhausted his administrative remedies with regard to the classification committee hearings on December 28, 2004, and October 25, 2005. See Brown, 422 F.3d at 935.

      Plaintiff does not dispute defendants' claim that he failed to exhaust his administrative remedies regarding the May 17, 2005 hearing, which was chaired by Defendant Lucarelli. Accordingly, defendants' motion to dismiss for failure to exhaust is GRANTED in part and DENIED in part. Defendant Lucarelli is DISMISSED from this case. The court addresses defendants' summary judgment motion below.

B.    Motion for Summary Judgment

      Even though plaintiff's appeals of the December 28, 2004 and October 25, 2005 hearings were sufficient to constitute exhaustion, his claims against defendants Swearingen and Foss do not survive summary judgment.

      1.    Standard of Review

      Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

      The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving

Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.06\Wyatt228grantmtdandmfsj.wpd

8

1  party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no
2  reasonable trier of fact could find other than for the moving party. But on an issue for which the
3  opposing party will have the burden of proof at trial, as is the case here, the moving party need
4  only point out "that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u> at
5  325.

6  Once the moving party meets its initial burden, the nonmoving party must go beyond the
7  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a
8  genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over
9  material facts and "factual disputes that are irrelevant or unnecessary will not be counted."
10 <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986). It is not the task of the court to scour
11 the record in search of a genuine issue of triable fact. <u>Keenan v. Allen</u>, 91 F.3d 1275, 1279 (9th
12 Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the
13 evidence that precludes summary judgment. <u>Id.</u> If the nonmoving party fails to make this
14 showing, "the moving party is entitled to judgment as a matter of law." <u>Celotex Corp v. Catrett</u>,
15 477 U.S. at 323.

16 At the summary judgment stage, the court must view the evidence in the light most
17 favorable to the nonmoving party: if evidence produced by the moving party conflicts with
18 evidence produced by the nonmoving party, the judge must assume the truth of the evidence set
19 forth by the nonmoving party with respect to that fact. <u>See</u> <u>Leslie v. Grupo ICA</u>, 198 F.3d 1152,
20 1158 (9th Cir. 1999).

21     2.    <u>Analysis</u>

22 The substance of plaintiff's claim is that he did not receive the process that he was due:
23 written notice of the charges 24 hours in advance, the opportunity to call witnesses and present
24 evidence at the hearing, and a written statement by the factfinder regarding the evidence upon
25 which the decision was based. (Compl. at 3, 5-6.)

26 Defendants respond that the classification process for plaintiff should be reviewed under
27 an administrative due process standard, which is more lenient than a punitive due process
28

Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.06\Wyatt228grantmtdandmfsj.wpd

standard, because "[t]he classification committees' decisions were administrative rather than punitive measures." (Mot. at 10.) Defendants argue that the purpose of the classification committees was merely to "evaluate plaintiff's classification status," and not to punish him. (Id.) As prisoners subject to an administrative process are due only notice and the opportunity to present his views to the official making the decision, Barnett v. Centoni, 31 F.3d 813, 814 (9th Cir. 1994) (citation omitted), defendants argue that plaintiff received more than he was due under the administrative due process standard, and that they are thus entitled to summary judgment. (Mot. at 10-12).

Plaintiff responds that his assignment to C/C status was not an administrative, but rather a punitive measure. (Opp. at 16.) In the punitive context, plaintiff argues that he is due a hearing before being deprived of a liberty interest based on misbehavior, under Boddie v. Schnider, 105 F.3d 857 (2d Cir. 1997). (Id.)

Whether a prison official's actions are characterized as administrative or punitive does not affect what process the prisoner is due. See Sandin v. Conner, 515 U.S. 472, 477-84 (citing to previous cases involving administrative actions as well as previous cases involving punitive actions, and explaining that what triggers a due process inquiry is the nature of the restraint being imposed on the prisoner). See also Keenan v. Hall, 83 F.3d 1083, 1089 (1996) (explaining that the Sandin analysis has replaced the "old . . . punitive/administrative dichotom(y)").

Even if defendants were correct that administrative actions should be held to a more lax standard than punitive actions, the court's analysis would not change. Here, plaintiff had already received three rule violation reports by the first hearing in December of 2004. California regulations on inmate discipline distinguish between administrative and other rule violations. Plaintiff's three offenses of "Refusal to Follow a Direct Order" all constituted serious, and thus non-administrative, violations. Cal Code Regs. tit. 15, § 3315(a)(3)(J). At his three hearings, the committees noted that they were assigning plaintiff to or retaining him on C/C status due to his refusal to accept a cellmate or to submit to a psychiatric evaluation, rather than for administrative purposes. (Mot., Ex. D-31, D-32, D-33.). Cf. Barnett, 31 F.3d at 814-15 (noting that the prisoner

Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.06\Wyatt228grantmtdandmfsj.wpd

10

had been reclassified because he had written a threatening letter, and "prison officials determined that [reclassification] was administratively warranted *pending* the hearing on the disciplinary charge" so that they "could better monitor his correspondence.")  At the summary judgment stage, the court must read the facts in the light most favorable to the plaintiff, and so the court will assume that the actions of the classification committees were punitive, because they classified plaintiff for his refusal to follow orders.

Prisoners' due process rights differ from those of other persons because the process of prisoner discipline "effectuates prison management and prisoner rehabilitative goals," and "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." (internal citations omitted).  Sandin v. Conner, 515 U.S. 472, 485 (1995).  In general, restraints on a prisoner only implicate the Due Process Clause if they "exceed[] the sentence in [] an unexpected manner." Id. at 483-84 (citing examples of restraints such as "transfer to mental hospital" and "involuntary administration of psychotropic drugs" as giving rise to due process interests on their own) (citations omitted).  However, states can "create liberty interests which are protected by the Due Process Clause," even if the interests would not implicate the Due Process Clause on their own. Id. at 484.

These liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. (internal citations omitted).  The Supreme Court has noted that, "Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system." Wilkinson v. Austin, 545 U.S. 209, 223 (2005).  However, relevant factors in determining whether a restraint imposes an atypical and significant hardship include: 1) whether the restraint in question mirrors restraints "imposed upon inmates in administrative segregation and protective custody" and thus is already within the prison's authority; 2)  whether the restraint would "invariably affect" the duration of the inmate's

sentence; and 3) the duration of the restraint.  <u>Sandin</u>, 515 U.S. at 485-87; <u>Myron v. Terhune</u>, 476 F.3d 716, 718 (9th Cir. 2007).

In <u>Wilkinson</u>, the Supreme Court held that assignment of an inmate to his state's supermax prison would impose an atypical and significant hardship on him because he was prohibited from almost all contact with other humans, and spent 23 hours a day in a dimly lit cell with one hour of exercise in "a small indoor room;" his assignment to the prison was indefinite in that there was a 30-day review and then only an annual review available; and he was disqualified from parole consideration, even if he otherwise would have been eligible.  545 U.S. at 223-24.

Plaintiff contends that being assigned to C/C status for a year created "an atypical hardship" for him.  (Opp. at 16.)  Inmates in Privilege Group C receive the following privileges and non-privileges:

> A) No family visits.
> B) One-fourth the maximum monthly canteen draw as authorized by the secretary.
> C) Telephone calls on an emergency basis only as determined by institution/facility staff.
> D) Yard access limited by local institution/facility security needs.  No access to any other recreational or entertainment activities.
> E) No personal property packages.

Cal. Code Regs. tit. 15, § 3044(f)(3)(A)-(E).  Inmates in Work Group C "earn zero worktime credits."  <u>Id.</u> § 3044(a)(5)(A).  For both groups, inmates placed in Work Group C or Privilege Group C can bring a challenge 30 days after the assignment, and there must be a hearing within 30 days of their challenge.  <u>Id.</u> § 3044(f)(1)(C), § 3044(a)(5)(B)

Inmates assigned to Privilege Group B, plaintiff's current privilege group, receive the following privileges:

> (A) One family visit each six months, unless limited by section 3177(b) or other law.
> (B) Visits during non-work/training hours, limited only by availability of space within facility visiting hours, or during work hours when extraordinary circumstances exist, as defined in section 3045.
> (C) One-half the maximum monthly canteen draw as authorized by the secretary.
> (D) One personal telephone access period per month.
> (E) Access to yard, recreation, and entertainment activities during the inmate's non-working/training hours and limited only by institution/facility security needs.
> (F) Excused time off as described in section 3045.2.
> (G) The receipt of four personal property packages, 30 pounds maximum weight each, per year, exclusive of special purchases.

Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.06\Wyatt228grantmtdandmfsj.wpd

12

Id. § 3044(3)(A)-(G). An inmate assigned to Work Group A2, plaintiff's current work group, are those "willing but unable to perform in a full-time assignment" who, by virtue of being assigned to that group, "receive three months credit for each six months served, or one day for each two days served," provided that "[t]he inmate is placed on a waiting list pending availability of a full-time work/training assignment." Id. § 3044(3)(A).

Although plaintiff no doubt experienced some difficulties in being assigned to Privilege Group C status for over a year, there is no indication that he suffered an atypical and significant hardship relative to the ordinary conditions of prison life. Privileges such as family visits, phone access, yard access, canteen draws, and personal packages are often regulated in prison. See generally id. § 3044 (explaining the different work groups and privilege groups in California prisons and their attendant privileges and nonprivileges, as well as when an inmate may be assigned to each group). In fact, the privileges given under his current privilege group assignment do not differ significantly from his previous assignment. He now has one family visit per six months instead of none, an additional one-quarter of the maximum monthly canteen draw, one telephone access period per month instead of none, and four personal packages instead of none. See id. § 3044(f)(3)(A)-(E) (outlining Privilege Group C privileges), § 3044(f)(3)(A)-(E) (outlining Privilege Group B privileges). The difficulties that plaintiff suffered from having his privileges restricted while assigned to Privilege Group C are not atypical or significant, relative to ordinary prison life. Cf. Wilkinson, 545 U.S. at 223-224 (prisoners placed in supermax facility were restricted from all human contact and confined to their cells for 23 hours a day).

Furthermore, plaintiff does not have a right to earn worktime credits in prison, and so his assignment to Work Group C did not create an atypical or significant hardship, either. See, e.g., Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir. 1982) (a prison's failure to provide rehabilitative, vocational, and work programs does not constitute an Eighth Amendment violation). Whatever liberty or property interests inhere in prison employment must be the product of state law, see Sandin v. Conner, 515 U.S. 472, 484(1995) (holding that state law can sometimes create a liberty interest where the interest would not on its own give rise to a

Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.06\Wyatt228grantmtdandmfsj.wpd

13

Fourteenth Amendment Due Process claim), and here, the State of California has affirmatively rejected creating a protected liberty or property interest in a prison job. Cal. Const. art. XIV § 5(c) (stating that "[n]othing in this section [on labor relations in prisons shall be interpreted as creating a right of inmates to work"); Toussaint v. McCarthy, 801 F.2d 1080, 1095 (9th Cir. 1986) (finding that Cal. Penal Code § 2933, the state statute that provides for worktime credits for prisoners, does not create a protected liberty interest).

Finally, there is no indication that plaintiff's assignment to Work Group C or Privilege Group C invariably affected the duration of his sentence.  Therefore, plaintiff did not suffer an atypical or significant hardship in being denied privileges or the ability to accumulate worktime credits when he was on C/C status for a year.

Nonetheless, even if the court assumes that plaintiff has suffered atypical and significant hardships, he has received sufficient due process under Supreme Court precedent.  Once a reviewing court determines that a liberty interest implicating the Due Process Clause is at stake, the court uses a balancing test to determine what process is due to the inmate in order to accommodate the competing interests at stake in the prison context:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Wilkinson, 545 U.S. at 224-25, quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  The inmate's private interest must be weighed "within the context of the prison system and its attendant curtailment of liberties." Wilkinson, 545 U.S. at 225.  The government's interest must be weighed within "the context of prison management" as well as "[t]he problem of scarce resources." Id. at 227-28.

Plaintiff has already received sufficient process as would be required under the Mathews test.  In Wilkinson, the Supreme Court held that the Ohio's informal, nonadversarial procedures given to prisoners facing potential assignment to the supermax prison "adequate to safeguard an inmate's liberty interest" under the Mathews test. Wilkinson, 545 U.S. at 228.  The Wilkinson

Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.06\Wyatt228grantmtdandmfsj.wpd

prisoners received process that appears to be almost identical to the process that plaintiff has received: notice of factual basis for supermax placement, an opportunity for rebuttal at a hearing although the prisoners are not permitted to call witnesses or present evidence, and multiple levels of review of a decision to place a prisoner in supermax. Id. at 218-19. Given that the hardship faced by the Wilkinson prisoners was much more atypical and significant than the hardship that plaintiff faced in being assigned to C/C status, the process that was sufficient for the former is certainly sufficient for the latter.

In fact, plaintiff has received almost all the process that he claims that he was due, including advance written notice, the opportunity to be present at his hearings and present his views, and written forms documenting the basis for the classification committees' decisions. (Mot. at 11.) Defendants have explained that the only process claimed by plaintiff in his complaint that he did not receive was the opportunity to call witnesses and show evidence in his favor. (Id.) Plaintiff does not dispute this claim in his opposition. Thus, he has already received the hearing that he claims in his opposition is required under Boddie. See 105 F.3d at 862. Plaintiff appears to have drawn the due process claims in his complaint from a previous case in which the Supreme Court held that a prison that seeks to discipline a prisoner by revoking good-time credits must provide him with advance written notice and written forms documenting the basis for the disciplinary decision. See Wolff v. McDonnell, 418 U.S. 539, 563-65 (1974). The Court also stated that a prisoner in disciplinary proceedings "should be allowed to call witnesses and present documentary evidence in his defense *when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals*," but notably did not require prisons to do so. Id. at 566 (emphasis added). Moreover, the Court expressly declined to "prescribe" that prison officials even state a reason for declining to give a prisoner the opportunity to call a witness or present evidence, recognizing that officials need discretion in their everyday operations of prisons. Id. The Supreme Court precedent regarding due process in disciplinary actions has since been refined by additional cases, most recently Wilkinson. Nonetheless, even by the

Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Defendants' Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.06\Wyatt228grantmtdandmfsj.wpd

15

1  standards of Wolff, plaintiff has received the process that he is due, because prison officials may
2  decline to allow him to call witnesses or present evidence.

3  Finally, plaintiff claims that the classification committees based their evidence on false
4  charges of his refusing a cellmate. (Compl. at 8, 9, 10.)  Even if a prisoner receives the process
5  that he was due, his "prison disciplinary convictions must be supported by 'some evidence' in
6  order to satisfy procedural due process."  Burnsworth v. Gunderson, 179 F.3d 771, 773 (9th Cir.
7  1999), quoting Superintendent v. Hill, 472 U.S. 445, 457 (1985).  Plaintiff offers no evidence to
8  support his assertion that the charges were false.  However, even if plaintiff is correct that the
9  charges were false, the classification committees still relied on "some evidence" of his refusing to
10 take a cellmate or undergo a psychiatric evaluation.  The defendants relied on rule violation
11 reports, which plaintiff had extensive opportunity to appeal, and plaintiff's documented behavior
12 in and outside of his hearings in refusing both a cellmate and psychiatric evaluation.  (Opp., Ex.
13 A-18, A-19, A-20.)  Plaintiff does not dispute that he was issued rule violation reports at FSP, but
14 instead asserts that they are "moot" and "irrelevant" to his case (Id. at 10), which does not affect
15 whether the reports constitute "some evidence."  Thus, the classification committees acted in
16 accordance with due process by relying on "some evidence" of plaintiff's discipline problems in
17 assigning him to C/C status.

18 Viewing the facts in the light most favorable to plaintiff, the evidence does not show that
19 the classification committees chaired by defendants Swearingen and Foss failed to give plaintiff
20 the process that he was due.  Thus, there is no genuine issue of material fact and defendants are
21 entitled to judgment as a matter of law.

22 Accordingly, the court GRANTS defendants' motion for summary judgment as to
23 defendants Swearingen and Foss, and DISMISSES defendant Lucarelli from this action.[2]

## CONCLUSION

25 Defendants' motion to dismiss for failure to exhaust is GRANTED in part and DENIED in

---

27  [2] The court does not reach the question of qualified immunity, because no defendants
28 remain.

Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Granting Defendants' Motion for
Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.06\Wyatt228grantmtdandmfsj.wpd

1  part. Defendants' motion for summary judgment is GRANTED. The clerk shall terminate any
2  pending motions and close the file.
3      IT IS SO ORDERED.
4  DATED: __1/5/10_____
5                                   RONALD M. WHYTE
                                 United States District Judge